**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| Emmalee Blalock,<br><br>Plaintiff,<br><br>v.<br><br>Walmart Distribution Center & SC Port Authority Access 4020, Walmart Stores East, LP, and Walmart, Inc.,<br><br>Defendant. | CASE NO.: 2:26-cv--_____<br><br>**Complaint**<br>**Jury Trial Demanded** |

The Plaintiff complaining of the Defendant would show unto this Honorable Court as follows:

**JURISDICTION AND PARTIES**

1. This suit is brought, and jurisdiction lies pursuant to the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §2000e *et seq.* and for sexual harassment under 42 U.S.C. §1981 and Title VII of the Civil Rights Act of 1964.

2. All conditions precedent to jurisdiction under §706 of Title VII, 42 U.S.C. §2000e-5, have occurred or been complied with.

   a. A charge of employment discrimination on basis of sexual harassment was filed by the Plaintiff with Equal Employment Opportunity Commission ("EEOC").

   b. Notification of the Right to Sue was received from the EEOC on or about August 28, 2026.

   c. This Complaint has been filed within the 90 days of receipt of the EEOC's Notice of the Right to Sue.

3. Plaintiff, Emmalee Blalock, is a citizen and resident of the State of South Carolina, and resides in Charleston County, South Carolina.

4. All discriminatory employment practices alleged herein were committed within the County of Charleston, State of South Carolina.

5. The Defendant, Walmart Distribution Center & SC Port Authority Access 4020, Walmart Stores East, LP, and Walmart, Inc, is upon information and belief, a foreign corporation organized in the State of Delaware and operating under the laws of the State of South Carolina.

6. Defendant is a "person" within the meaning of §701 Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e.

7. Defendant is an industry that affects commerce within the meaning of the Civil Rights Act of 1964, 42 U.S.C. §2000e.

8. Defendant employs fifteen (15) or more employees and is an "employer" within the meaning of the Civil Rights Act of 1964, 42 U.S.C. §2000e.

9. The parties, matters and all things hereinafter alleged are within the jurisdiction of the Court.

## STATEMENT OF FACTS

10. On or about September 13, 2024, Plaintiff began working for Defendant as an Order Filler at Walmart Distribution Center & SC Port Authority Access 4020. At all times, Plaintiff was effective and efficient in her employment.

11. During Plaintiff's employment – beginning on or around December 28, 2024 – Plaintiff was subjected to inappropriate sexual advances, comments and gestures by one of Defendant's employee and Plaintiff's position trainer, Bradley Scott.

12. Bradley Scott would constantly request to have a sexual relationship with Plaintiff and directed vulgar, sexual innuendos towards Plaintiff during each work shift they had together. Plaintiff would repeatedly turn down Bradley Scott and request him to stop. He would also constantly attempt to hug or find an excuse to touch Plaintiff while the two were at work at the same time, which was several times per week. Mr. Scott would offer her money or gifts in an effort to persuade her to date him, spread rumors of a relationship, and refused to assist her at work if she rejected him further.

13. Bradley Scott would make comments about being in love with the Plaintiff and made remarks to her about her breasts, both at work and outside of work, through text message. The Plaintiff would repeatedly ask him to stop. He would also stare at Plaintiff while she worked.

14. On several occasions, Bradley Scott, made a comments about killing or harming himself when Plaintiff would not acquiesce to his advances or reciprocate his sexual attempts. He also told Plaintiff things like, "If I can't have you, I have nothing to live for," or "I am going to hang myself in E Dock" when she would deny his sexual advances.

15. Starting in January, 2025, Plaintiff repeatedly requested directly to Bradley Scott that he stop the sexual advances, requests for dates, comments regarding her body, and to stop staring at her while they were at work together. However, Mr. Scott was undeterred and continued to make unwanted sexual and romantic advances on Plaintiff.

16. The Plaintiff reported the sexual harassment by Bradley Scott to her area managers, Bryan Daughty and Carmen Thomas, but the harassment did not stop and no action was taken by

Defendants or their employees to stop the sexual advances or remove either Mr. Scott or Plaintiff from the situation.

17. Plaintiff filed a written complaint to Defendant via a Walmart Voluntary Statement Form about the ongoing harassment with Defendant and Mr. Scott on May 5, 2025.

18. After reporting Bradley Scott, Plaintiff was moved to a different position within the same facility, but Bradley Scott was allowed to remain in the same position. Additionally, Plaintiff was reassigned non-conveyable freight, which negatively affected her productivity number because Defendant did not make the proper adjustments for her required output in this new position.

19. After Bradley Scott became aware that Plaintiff reported him, he changed his harassment tactics. He began waiting for Plaintiff outside the restroom, sitting in the breakroom when Plaintiff took her lunch break, and finding excuses to be in her work area when he had no reason to be there.

20. After the complaints, Plaintiff was forced to continue to work with Bradley Scott wherein the same harassment and inappropriate behavior continued, thereby creating a hostile work environment.

21. On or about August 16, 2025, Plaintiff was terminated, due to her reports of sexual harassment. Defendant's justification for Plaintiff's discharge was pretextual in nature, and not the true reason for terminating Plaintiff.

22. It was the duty of Defendant, by and through its agents, servants and/or employees, to prevent such acts and behavior from occurring and to stop it once the behavior had been reported by the Plaintiff.

23. Despite her reporting the behavior, Defendant did not take appropriate action to resolve the problems and disciplined Plaintiff for Bradley Scott's inappropriate behavior towards her.

24. That the unjust disciplinary actions and termination of Plaintiff with Defendant was the response by Defendant, its agents and servants, to Plaintiff's reports and complaints of lewd and inappropriate behavior of Bradley Scott including sexual harassment.

25. Defendant retaliated against Plaintiff for reporting the sexual harassment and failed to stop the harassment, disparate treatment, and inappropriate behavior, thereby creating a hostile work environment. Plaintiff's termination was pretextual in nature and not the true reason for letting the Plaintiff go.

26. That the aforesaid conduct of Defendant, its agents and servants, violates South Carolina and United States laws against retaliatory dismissal and was, in fact, retaliatory in nature, and the other retaliatory acts against Plaintiff leading up to her termination created a hostile work environment in violation of Title VII of Civil Rights Act of 1964, as amended (42 U.S.C. §2000e *et seq*.).

27. As a direct and proximate result of the acts and practices of Defendant in retaliating against Plaintiff, creating a hostile work environment and in the unlawful termination of Plaintiff from employment, the Plaintiff has suffered and continues to suffer from mental anguish, humiliation, loss of enjoyment of life, damage to Plaintiff's reputation and other past and future losses.

28. Plaintiff was 19 years old when the harassment began and Bradley Scott was 31.

**FOR A FIRST CAUSE OF ACTION**
**(Sexual Harassment - Title VII of the Civil Rights Act of 1964)**

29. Plaintiff reiterates and reasserts each and every allegation in the preceding paragraphs as if fully set forth herein.

30. Defendant as the employer Bradley Scott, was wanton, and intentional in the harassment of the Plaintiff in the following particulars, to wit:

a. In visual, physical, and verbal contact by sexual advances and gestures that were initiated, maintained, and repeated after being informed by the Plaintiff that the contact was unwanted;

b. In continually allowing Bradley Scott to maintain his presence near the Plaintiff while at work in an uncomfortable and inappropriate manner;

c. In refusing to remediate hostile work environment and sexual harassment.

31. That by reason of the aforesaid recklessness, willfulness and wantonness of Defendant, Plaintiff has suffered injuries, both physically and mentally.

32. As a direct and proximate result of the acts and practices of Defendant in the illegal termination of Plaintiff from employment, the Plaintiff has suffered and continues to suffer from loss of income, mental anguish, humiliation, loss of enjoyment of life, damage to Plaintiff's reputation, and other past and future losses.

**FOR A SECOND CAUSE OF ACTION**
**(Retaliation)**

33. Plaintiff reiterates and reasserts each and every allegation in the preceding paragraphs as if fully set forth herein.

34. As alleged above, Plaintiff satisfactorily performed her essential and fundamental job functions and was an exemplary employee in all respects. Upon reporting the detrimental treatment and discrimination based on reporting the sexual harassment, Plaintiff was terminated from her position in retaliation for asserting her rights under Title VII of Civil Rights Act of 1964, as amended (42 U.S.C. §2000e *et seq*.), the South Carolina Human Affairs Law and the Equal Employment Opportunity Act.

35. Plaintiff reported the sexual harassment to Defendant in May 2025. After reporting the sexual harassment, Plaintiff suffered the following adverse employment actions:

i. Plaintiff was moved to a different part of the Distribution Center;

ii. Plaintiff was reassigned to non-conveyable freight;

iii. Plaintiff received unexcused absence infractions for approved time off;

iv. Plaintiff's productivity output was inaccurately accounted for; and

v. Plaintiff was terminated.

36. All of these actions were retaliatory in nature, and furtherance of Defendant's scheme or artifice to terminate Plaintiff "for cause". In fact, Defendant's stated reasons for termination and illegal discharge were mere pretext for the retaliation against Plaintiff based on her engaging in protected activity.

37. That the aforesaid conduct of Defendant, its agents and servants, violates South Carolina and United States laws against retaliatory discharge and was, in fact, retaliatory in nature and in violation of Title VII of Civil Rights Act of 1964, as amended (42 U.S.C. §2000e *et seq*.), the South Carolina Human Affairs Law and the Equal Employment Opportunity Act.

38. In failing to protect the Plaintiff from retaliation, the Defendant acted with malice or reckless indifference to the federally protected rights set out under Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §2000e et seq.).

39. Plaintiff is entitled to injunctive relief and/or civil damages from Defendant as a result of Defendant's retaliation as alleged above.

40. That the aforesaid conduct of Defendant, its agents and servants, violates South Carolina and United States laws against retaliation and was, in fact, retaliatory in nature.

41. Due to the acts of Defendant, its agents and employees, Plaintiff is entitled to injunctive relief and/or civil damages, back wages, plus interest, payment for lost benefits, and reinstatement of benefits and front pay.

## PRAYERFOR RELIEF

42. Plaintiff reiterates and reasserts each and every allegation in the preceding paragraphs as if fully set forth herein.

43. Due to the acts of the Defendant, Plaintiff suffered great emotional and mental distress, terror, fright, revulsion, disgust, humiliation, embarrassment, shock and indignities, lost wages, loss of front pay, back pay and other work benefits.

44. That by reason of such wrongful acts of the Defendant, the Plaintiff has been damaged in such an amount to be determined by the trier of fact.

**WHEREFORE**, Plaintiff respectfully prays for the following relief:

I. Judgment in favor of the Plaintiff and against Defendant for all causes of actions in an amount which is fair, just and reasonable, and for compensatory damages;

II. Prejudgment interest, costs and attorney fees as may be allowed by law;

III. Judgment in favor of the Plaintiff and against Defendant with back pay and associated benefits she would have earned with all lost or diminished benefits such date to be determined by the trier of fact;

IV. Judgment in favor of the Plaintiff and against Defendant for front pay and any other work benefits she lost in an amount to be determined by the trier of fact;

V. Judgment in favor of the Plaintiff and against Defendant for embarrassment and humiliation, and emotional distress in an amount to be determined by the trier of fact;

VI. Judgment against Defendant in such an amount of actual damages, punitive damages, attorney fees, and costs of this action and any; and

VII. Any other relief, legal or equitable, this Honorable Court deems just and proper.

Respectfully submitted.

**WIGGER LAW FIRM, INC.**

s/ ***Matthew O. King***
Matthew O. King (Fed. I.D. #13793)
8086 Rivers Avenue, Suite A
North Charleston, SC 29406
(843) 553-9800
mking@wiggerlawfirm.com
*Attorney for the Plaintiff*

North Charleston, South Carolina
November 20th, 2026